IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY, COMPANY OF AMERICA, | * * * | |
| Plaintiff, | * * | |
| v. | * * | CV 322-004 |
| NICHOLAS HARDEE, Individually and as Administrator of the Estate of Clifford Lee Hardee; JESSIE HARDEE BASS; and NICOLE HARDEE, | * * * * * * | |
| Defendants. | * | |

**O R D E R**

On January 14, 2022, Plaintiff Travelers Property Casualty Company of America ("Travelers") brought this declaratory judgment action seeking a declaration from the Court that the limit of its obligation to indemnify Defendants in connection with a fatal car accident is $100,000.[1]  For their part, Defendants contend that they are entitled to the full limits of the applicable policy's liability coverage, or $1,000,000.  The parties filed cross-motions for summary

---

[1] The car accident occurred on August 3, 2021.  At the time, Defendants' decedent, Mr. Clifford Lee Hardee, was operating a vehicle owned by Interstate Nationalease, Inc., which is a named insured under the applicable policy.  As an occupant of a covered auto, there is no dispute that Mr. Hardee is an "insured" under the policy.

judgment on the issue, and the Court heard oral argument on the motions on September 27, 2023.

## I.  FACTUAL BACKGROUND

Travelers initially issued a commercial insurance policy to Fred Taylor Company for the policy period February 1, 2017 to February 1, 2018 (the "17-18 Policy").  Travelers would issue four more commercial insurance policies to Fred Taylor Company in consecutive years, i.e., the 18-19 Policy, the 19-20 Policy, the 20-21 Policy, and the relevant policy herein, the 21-22 Policy.

Each of the Policies include a Georgia Uninsured Motorist (UM) Endorsement, which provides coverage added on to the at-fault liability limits.  Under Georgia law, the amount of UM coverage must be equal to the limit of liability unless the insured "affirmatively choose[s] [UM] limits in an amount less than the limits of liability." O.C.G.A. § 33-7-11(a)(1)(B).  According to Travelers, Fred Taylor Company's Policies provided two-tiered UM coverage.  The first tier provided UM coverage equal to the auto liability limits for certain Named Individuals.[2]  The second tier, which is at issue here, provided UM coverage in an amount less than the liability limits for all other insureds.  Defendants contend that this may have been so with respect to the first few years of coverage, but not so for the 21-22 Policy.

---

[2] All of the Policies included a Named Individuals Endorsement, which insures the named individuals and his or her family members. There is no contention in this lawsuit that the decedent was a Named Individual or family member.

In order to resolve the issue, the Court will now detail the documents in the case as they pertain to Travelers' coverage of Fred Taylor Company and its insureds. Prior to the issuance of the 17-18 Policy, Travelers received an insurance application from Fred Taylor Company's then insurance agent seeking $1,000,000 in auto liability coverage, combined single limit; $1,000,000 limit for four particularly Named Individuals; and $50,000 in UM coverage, combined single limit, for all other insureds. (Decl. of John Falkman, Doc. No. 47-9, ¶ 9 & Doc. Nos. 47-21, 47-22.) The 17-18 Policy was originally issued without a Supplementary Schedule; but on March 28, 2017, Travelers provided one to the Fred Taylor Company by e-mail. The Supplementary Schedule sets forth the 17-18 Policy's UM coverage limits as $1,000,000 for four specifically Named Individuals and $75,000 for all other insureds. (Doc. No. 47-23.) On July 7, 2017, Travelers received a "Supplementary Commercial Automobile Application Georgia" form (referred to by the parties as a "Selection Rejection Form"), which was executed by Fred Taylor Company on May 11, 2017. This Selection Rejection Form shows Fred Taylor Company's selection of $75,000 in UM coverage below the statement: "I wish to <u>select</u> limits less than the policy Bodily Injury and Property Damage Liability limits (Specify limit)." (Doc. No. 47-6.)

Just prior to the first renewal of the Policy, Travelers received a Selection Rejection Form executed by the Fred Taylor Company on January 25, 2018, showing its selection of UM coverage "at Minimum Financial Responsibility Limits." This Selection Rejection Form

3

states that "Minimum Financial Responsibility Limits" are $75,000 each accident Combined Single Limits." (Doc. No. 47-7.) As it pertains to this 18-19 Policy, the Supplementary Schedule also sets forth the UM coverage limits as $1,000,000 for six specifically Named Individuals and $75,000 for all other insureds. (Doc. No. 47-11, at 68.)

For the subsequent renewal period, Travelers received a Selection Rejection Form executed by Fred Taylor Company on January 24, 2019, showing its selection of $75,000 in UM coverage below the statement: "I wish to select limits less than the policy Bodily Injury and Property Damage Liability Limits (Specify limit)." (Doc. No. 47-8.) Similarly, the Supplementary Schedule for the 19-20 Policy sets forth the UM coverage limits as $1,000,000 for six specifically Named Individuals and $75,000 for all other insureds. (Doc. No. 47-15, at 76.)

The documents pertaining to the 20-21 Policy do not appear to include an endorsed Selection Rejection Form despite the fact that Travelers listed the form among those necessary to effect a renewal of Fred Taylor Company's commercial policy. (See Letter of Oct. 30, 2019 from Travelers, Doc. No. 49-4.) Nevertheless, the Supplementary Schedule for this policy period sets forth the UM coverage limits as $1,000,000 for six specifically Named Individuals and $75,000 for all other insureds. (Doc. No. 47-17, at 74.)

Finally, the subject policy in this case, the 21-22 Policy, also does not include an endorsed Selection Rejection Form.[3]   In fact, four months prior to the accident, an audit of Travelers' files revealed that the Fred Taylor Company file did not have a Selection Rejection Form for UM coverage for the 21-22 Policy. (Doc. No. 49-6.)   There is a Supplementary Schedule though, which sets forth the UM coverage limits as $1,000,000 for six specifically Named Individuals and, this time, $100,000 for all other insureds. (Doc. No. 47-20, at 66.)

Following the accident on August 3, 2021, Defendants demanded the $1,000,000 limit from Travelers, contending that the $100,000 UM limit is ineffective under the law because Travelers had not provided "proof of [Fred Taylor Company's] written selection to have uninsured limits below its limits of liability . . . ." (Compl., Ex. C.)   Notably, the Fred Taylor Company endorsed a Selection Rejection Form on September 13, 2021, after the car accident, which indicates its selection of UM limits less than the policy Bodily Injury and Property Damage Liability Limits in the amount of $100,000. (Compl., Doc. No. 1, Ex. B.)   Travelers contends that this form was executed only in response to defense counsel's insistence that the 21-22 Policy's Supplementary Schedule "cannot support an inference that the insured made an affirmative choice among the various UM coverage

---

[3] On October 29, 2020, Travelers had requested, *inter alia*, a Selection Rejection Form from Fred Taylor Company in order to affect a renewal of the commercial policy. (Doc. No. 49-5.)   Apparently, one was not executed contemporaneous with the policy renewal.

options available to it because it raises merely a conjecture of possibility of the fact." (Decl. of Michael Robinson, Doc. No. 57-4, ¶ 5; Id. Ex. B, Defs.' Ltr. of Sept. 8, 2021 (citing Gov't Employees Ins. Co. v. Morgan, 800 S.E.2d 612, 615 (Ga. Ct. App. 2017).)

Contending that the record shows the Fred Taylor Company affirmatively selected the $100,000 limit for all insureds other than the Named Individuals, Travelers tendered $100,000 to Defendants. Upon Defendants' rejection of the same, Travelers filed this declaratory judgment action.

Discovery closed in the case on April 11, 2023 without the parties taking any depositions. The parties filed cross motions for summary judgment on May 11, 2023, each seeking a declaration of the applicable UM coverage limit for the subject accident. The Clerk gave each party respective notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. Nos. 50 & 51.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.

## II.   SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

purpose of the summary judgment rule is to dispose of unsupported claims or defenses, which, as a matter of law, raise no genuine issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322—24 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . [only] if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" for a jury to return a verdict for the nonmoving party. Id. at 252; accord Gilliard v. Ga. Dep't of Corrs., 500 F. App'x 860, 863 (11th Cir. 2012) (per curiam). Additionally, the party opposing summary judgment "may not rest upon the mere allegations or denials in its pleadings. Rather, [his] responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576—77 (11th Cir. 1990). As required, this Court will view the record evidence "in the light most favorable to the [nonmovant]," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and will "draw all justifiable inferences in [Plaintiff's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal quotation marks omitted).

### III. **LEGAL ANALYSIS**

Georgia law sets UM coverage in an automobile insurance policy to be equal to the policy's bodily injury liability coverage by default. See O.C.G.A. § 33-7-11(a)(1)(B); see also Gov't Employees Ins. Co. v. Morgan, 800 S.E.2d 612, 615 (Ga. Ct. App. 2017). This statutory default applies unless the insured "affirmatively choose[s] uninsured motorist limits in an amount less than the limits of liability." O.C.G.A. § 33-7-11(a)(1)(B). An insured's affirmative election of a lesser amount of UM coverage need not be in writing. Morgan, 800 S.E.2d at 614 (cited source omitted). Nevertheless, the burden of showing an insured's affirmative election remains on the insurer; in the absence of such evidence, the default amount of UM coverage is the policy's liability limit. Jones v. Ga. Farm Bureau Mut. Ins. Co., 885 S.E.2d 13, 18-19 (Ga. Ct. App. 2023).

In this case, Travelers contends that Fred Taylor Company made an affirmative election in the subject policy, as renewed, to carry UM coverage less than its bodily injury liability limit, i.e., $100,000. Travelers relies upon the Selection Rejection Forms of May 11, 2017 (executed months after the issuance of the policy); January 25, 2018 (executed upon renewal); and January 23, 2019 (executed upon renewal) – and the five separate Supplementary Schedules, which it likens to Declaration Pages, for each policy period indicating UM coverage in an amount less than the policy liability limit.[4]

---

[4] The record also contains the post-accident Selection Rejection Form executed by Fred Taylor Company on September 13, 2021.

In brief, Defendants initially rely upon language in the Morgan case to argue that the Supplementary Schedules indicating UM coverage in amounts less than the bodily injury liability coverage are insufficient to carry Travelers' burden under O.C.G.A. § 33-7-11(a)(1)(B). It is true that the Georgia Court of Appeals stated: "The declarations page . . . 'cannot support an inference that [the insureds] made an *affirmative* choice among the various UM coverage options available under O.C.G.A. § 33-7-11(a)(1), because it raises merely a conjecture or possibility of that fact.'" Morgan, 800 S.E.2d at 616 (quoting McGraw v. IDS Prop. & Cas. Ins. Co., 744 S.E.2d 891, 894 (Ga. Ct. App. 2013)). In the Morgan case, the declaration page of the subject policy was the only evidence presented of the insured's selection for UM coverage. Under those circumstances, the Court of Appeals held that the declaration page "standing alone" did not demonstrate an affirmative choice of a lesser amount of coverage. Id. (citing McGraw, 744 S.E.2d 891); McGraw, 744 S.E.2d at 894 ("The amount of coverage specified on the declarations pages . . . does not demonstrate that [the insured] made the required choice.")).

---

Notably, this form was presented by Plaintiff in support of its motion for summary judgment, and it was not considered in the Court's determination of the policy's UM coverage. Moreover, Travelers presents the Declaration of Sharon Veasey, Fred Taylor Company's Chief Financial Officer, who avers that "[i]t was always Fred Taylor's intent to choose an amount of UM coverage lower than the Policies' liability limits for those insureds" other than the Named Individuals. (Veasey Decl., Doc. No. 47-4, ¶ 6.) Because the documentary evidence demonstrates Fred Taylor Company's affirmative choice to have lesser UM coverage, the Court views the Declaration as superfluous.

Defendants' reliance on Morgan is misplaced, however, because Fred Taylor Company's intent is demonstrated in documents beyond the Supplementary Schedules.

Fred Taylor Company's affirmative choice to elect UM coverage in an amount lower than the bodily injury coverage limit is demonstrated in the Selection Rejection Forms, which are buttressed by the resulting Supplementary Schedules. Even so, Defendants challenge the use of the Selection Rejection Forms. They point out that the first Selection Rejection Form was not executed contemporaneously with a decision by Fred Taylor Company to choose lesser UM coverage. Defendants also dismiss using the 2018 and 2019 Selection Rejection Forms as evidence of Fred Taylor Company's intent for the 21-22 Policy period. Instead, Defendants insist that because the Fred Taylor Company changed its UM coverage amount for this period, new evidence of Fred Taylor Company's affirmative choice for the 21-22 Policy period is necessary. Stated another way, Defendants contend that the prior years' Selection Rejection Forms are insufficient to carry Travelers' burden of showing the Fred Taylor Company's affirmative choice for the 21-22 Policy period.

Defendants' complaint that the first Selection Rejection Form of May 11, 2017, was not executed at the time the policy was issued ignores a critical document in the case – the application. In its insurance application, Fred Taylor Company demonstrated its intent to seek UM coverage in the amount of $50,000 for insureds other than the Named Individuals. This was an amount far less than the bodily

injury liability limit of $1,000,000.  Thus, the Fred Taylor Company demonstrated its intent to choose lesser UM coverage at the outset. The fact that the 17-18 Policy ultimately provided $75,000 in UM coverage for insureds other than the Named Individuals does not negate Fred Taylor Company's intent.

Significantly, Georgia case law concentrates on evidence of the insured's intent or affirmative choice, notwithstanding the absence of a specific amount of coverage, as this is what is required by O.C.G.A. § 33-7-11.  See Jones, 885 S.E.2d at 20 ("[T]he appellants identify no language in the UM statute dictating that an insured must select a specific amount of UM coverage at the same time or even on the same page/document when he or she makes the affirmative choice of UM coverage in an amount less than a policy's liability limits."). In the Jones case, the insured was determined to have affirmatively elected UM coverage in an amount less than the policy's liability limits because he signed his name directly underneath the following statement:  "I affirmatively choose Uninsured Motorist Limits in an amount less than the Limit of Liability for Bodily Injury and Property Damage Coverage."  Id. at 19.  Even though the form did not provide the insured with an option to select a specific amount of UM coverage, the Georgia Court of Appeals found the form to be sufficient evidence of the insured's intent.  Id. at 20.  The Court stated that the specific amount of UM coverage could be determined by reviewing the declaration page.  Id.  In this case Fred Taylor Company executed a Selection Rejection Form in three prior policy years with nearly

11

identical language that evidence the insured's intent to elect lesser UM coverage.  Besting the form in the Jones case, however, the Selection Rejection Forms executed by the Fred Taylor Company contain a specific amount of UM coverage, which are then reflected in the Supplementary Schedules.  Yet, the specific amount need not be in the document signaling the insured's intent.  Thus, any difference in the amount of coverage requested and the amount of coverage provided is not determinative of intent.

Defendants also point to Travelers' failure to follow its own apparent policy or practice of having new Selection Rejection Forms executed upon renewal.  The Court determines that any failure of Travelers in this regard is irrelevant to Fred Taylor Company's intent.  The coverage amount is dictated by statute, O.C.G.A. § 33-7-11; the requirement thereunder to show an affirmative choice cannot be altered by an insurance company's policy or practice.  See Frey v. Jesperson, 883 S.E.2d 419, 425 (Ga. Ct. App. 2023) (finding that an insured's choice of reduced UM coverage was effective even though the election form was submitted past the insurer's imposed deadline).

In the end, the Court finds Cline v. Allstate Prop. & Cas. Ins., 841 S.E.2d 63 (Ga. Ct. App. 2020), most instructive.  In Cline, the insured executed a selection rejection form in October 2008, on which she selected UM coverage in an amount less than the liability limit of her policy.[5]  Id. at 64.  The insured's policy was continuously

---

[5] In point of fact, five years earlier the insured had actually elected to include UM coverage equal to her bodily injury limit of

renewed until 2016, the year of the subject accident.  The declaration page of the policy in effect at the time of the accident listed $25,000 UM coverage and a liability limit of $100,000.  Id.  There was no evidence of an annual selection of $25,000 in UM coverage upon the renewals; nevertheless, the Georgia Court of Appeals determined that because the insured affirmatively chose UM coverage at a lesser amount of $25,000 in 2008, that amount applied to the 2016 policy period through renewals.  Id. at 65.  Similarly, Fred Taylor Company's election of lesser UM coverage in preceding years evidences its affirmative election that carried through renewals to the subject policy period, notwithstanding the increase from $75,000 to $100,000.  See also Infinity General Ins. Co. v. Litton, 707 S.E.2d 885, 889 (Ga. Ct. App. 2011) (holding that insured was not required to make a new affirmative election of UM coverage upon renewal of his policy).

Defendants use the UM coverage increase in the 21-22 Policy to $100,000 to argue that the Policy cannot be considered a renewal.  As Defendants would have it, this new policy resets the entire situation, as if the Fred Taylor Company's knowledge of its UM coverage choices was suddenly erased.  Defendants continue that because there is no contemporaneous evidence that Fred Taylor Company affirmatively chose to have its UM coverage limited to $100,000, coverage should default

_____

$25,000.   In 2008, she chose to increase her bodily injury liability limit to $100,000 but kept her UM coverage at $25,000, signing an "uninsured motorist coverage disclosure and acknowledgment of receipt" form explaining the UM coverage.  Id. at 64.

to the policy liability limit of $1,000,000.  Or at the very least, as argued at oral argument, a genuine dispute of fact exists as to Fred Taylor Company's intent in the 21-22 Policy period because of the change in UM coverage.

As previously noted, however, the specific amount of UM coverage is not determinative of the insured's intent.  Additionally, Defendant's argument that this is a new policy is a nonstarter.  Under Georgia law, a renewal policy is policy "superseding at the end of the policy period a policy previously issued and delivered by the same insurer . . . ."  O.C.G.A. § 33-24-45(b)(3).  That is exactly what is present here:  the original 17-18 Policy was followed by four superseding policies issued at the end of each one-year policy period by the same insurer, Travelers.  Thus, this is not a new policy.

Importantly, O.C.G.A. § 33-7-11 addresses policy renewals.  It provides that if an insured rejects UM coverage, UM coverage "need not be provided in or supplemental to a renewal policy . . . in connection with a policy previously issued to said insured by the same insurer."  O.C.G.A. § 33-7-11(a)(3).  It further provides that the "amount of [UM] coverage need not be increased from the amounts shown on the declarations page on renewal once coverage is issued."  Id.  In effect, this subsection provides an exception to the requirement that an insurer offer UM coverage each time a policy is issued or delivered.  Morgan, 800 S.E.2d at 615 (cited source omitted) ("Thus, Subsection (a)(3) relieves an insurer of the 'administrative burden' of obtaining a fresh written rejection of UM coverage for

14

every renewal period from an insured who has already rejected that coverage in writing."). Surely if Subsection (a)(3) relieves the insurer's obligation to offer UM coverage when a policy is renewed, it also relieves the insurer's obligation to obtain an affirmative election for UM coverage below the liability limit with every renewal. Cf. Jones, 885 S.E.2d at 36 n.7 (indicating that the insurance company was not required to annually offer the insured, who had elected UM coverage in an amount less than the liability limit, the option to change his UM coverage absent a request to do so); Frey, 883 S.E.2d at 422 n.17 (stating that insured was not required to execute and submit an updated UM coverage selection form after his original selection of reduced-by UM coverage).

In conclusion, the undisputed evidence in this case shows that the Fred Taylor Company affirmatively elected to provide UM coverage in an amount less than the bodily injury liability limits of its insurance company in the initial 17-18 Policy period and continuing through the four renewals as evidenced by the application, the Supplementary Schedules, and the Selection Rejection Forms.

## V. CONCLUSION

Upon the foregoing, the Court determines as a matter of law that the Fred Taylor Company affirmatively chose two-tiered UM coverage in its initial policy with Travelers, which applied in every renewal to include the 21-22 Policy period, and that Defendants' decedent is subject to the second tier of coverage. Accordingly, the Court

**DECLARES** that Plaintiff Travelers has a duty to indemnify Defendants for the subject accident in the amount of $100,000. Thereupon, Plaintiff Travelers Property Casualty Company of America's motion for summary judgment (doc. no. 47) is **GRANTED**. Defendants' motion for summary judgment (doc. no. 49) is **DENIED**. The Clerk shall **ENTER JUDGMENT** in the case in favor of Plaintiff Travelers and **CLOSE** the case. Costs are taxed against Defendants.

**ORDER ENTERED** at Augusta, Georgia, this 12ᵗʰ day of September, 2023.

UNITED STATES DISTRICT JUDGE

16